I first should mention that Judge McDade wasn't able to be here today, but she will have access to the oral arguments here today, and we'll participate in the discussions among the three of us about this case. We'll fully participate in those discussions and evaluations of the case, and we'll be able to obviously hear these arguments. Thank you, Your Honor. Counsel, good afternoon, Your Honors. May it please the Court. My name is Anand Swaminathan, along with my colleague David Storer, who represents Matt Haberkorn. Mr. Haberkorn is here today in the gallery. We're here on an appeal for Mr. Haberkorn's conviction for a felony crime based upon a failure to read the plain language of the statute at issue, and a failure to strictly construe the criminal statute at issue in a way that was favorable to the criminal defendant. The result of that was basically an injustice. The reality is the result is Mr. Haberkorn was essentially convicted for committing an act of kindness, and I want to explain what I mean by that. The reality is Mr. Haberkorn allayed the fact, and the facts are really simple and they're undisputed. The parties are basically in agreement. A young woman named Stacy Gerke had three kids. Ms. Gerke was part of a parenting program called Jump Start. It was a program put on by the Easter Seals of Joliet. Ms. Gerke contacted her cousin, Matt Haberkorn, and said, Matt, I'm part of this parenting program. Will you participate? Will you help me with the kids and let me go on this event? He says yes. Mr. Haberkorn and his cousin Stacy Gerke and her three kids stand in a Walmart parking lot on November 4th, 2015. A bus arrives. The bus had come from the Easter Seals headquarters, comes over to the Walmart parking lot, picks them up along with other families. On the bus are approximately 20 children, 20 adults, 20 parents of those 20 children, and an additional five so-called parent educators from the Jump Start program of the Easter Seals. They call themselves parent educators. At that point, another woman on the bus recognizes Mr. Haberkorn and says, I went to high school with him. He's a sex offender. He's not supposed to be on the bus. She was correct. Mr. Haberkorn is required to register as a sex offender. When he was 17 years old, he had consensual sex with a 15-year-old friend. He committed a crime. It's a crime committed by many high schoolers around this country, but it is a crime, and he pled guilty to it, and he was convicted to misdemeanor criminal sexual abuse, and he's had to register ever since. So the young woman on the bus was correct. She informed the parent educators on the bus. They went to Mr. Haberkorn and asked him to leave, and he did so without incident. Those are the facts of the case. On those facts, Mr. Haberkorn was convicted of a felony crime. It's our view that there is no basis in the law for Mr. Haberkorn to have been convicted of a crime based on those actions. Now, the state says he violated a provision called 720-ILCS 5-11-9.3, and in particular, Provision C of that statute. That provision states it is unlawful for a child sex offender to knowingly be present at any facility providing programs or services exclusively directed towards persons under the age of 18. Now, that's the first clause. That's sort of the catch-all provision. There are additional clauses within that Provision C. It is also unlawful for a child sex offender to knowingly be present at a daycare center, a part-day child care facility, child care institution, school providing before and after school programs for children, and a daycare home or a group daycare home. So the idea is the legislature created a statute that basically says, hey, we don't want child sex offenders going to certain types of places like daycares and after school programs that are essentially places for children where parents drop their kids off and hope that their kids are going to be safe and going to be okay when they come back to pick them up. And they included a catch-all provision that says you can't be knowingly present at a facility providing programs or services exclusively directed towards children. And that provision serves a function, no doubt, and that function seems pretty clear. The idea is, look, we're not going to let you wiggle your way out of criminal liability based on some kind of technicality. Well, maybe the school has run out of a church basement. And you say, oh, well, it's a church, not a school, so I get out of this. No, that catch-all provision will serve an important role. So that's the way the statute works, and it seems pretty straightforward. But what happened in this case is the state is saying, take that first catch-all provision and essentially use it expansively. Use it to mean something far beyond daycare centers and after school programs. Use it to mean zoos and museums and potentially parks and any other places, arcades, any places where people under the age of 18 are going to go. That catch-all provision cannot be used in that way. The legislature didn't intend for that catch-all provision to be used in that way, and we know the legislature didn't intend for it to be used that way because they used very particular language in that provision. And the language they used was exclusively directed towards children. And that word exclusively serves a very important function. That word can't be ignored. And because of that word, the state's idea that the conduct of Mr. Havercourt that I explained earlier, agreed conduct, it cannot be the case that conduct violates this criminal provision that they've charged him with. Before I move on to talk a little bit more about the relevant statutory interpretation here, because this is really about the interpretation of this provision of this statute and what it means, I want to say something about the standard of review because the parties are in disagreement about the applicable standard of review in this case. We say the standard of review is de novo. The state says the standard of review is different, that instead all facts must be assumed in a way that's favorable to the prosecution. And the question is whether any reasonable trier of fact could find that evidence reasonable beyond a reasonable doubt that the person was guilty on the facts favorable to the prosecution. My apologies. So let me say this first. We believe the evidence in this case is such that whether you use the standard of review that was de novo or the standard of review the state suggests, you couldn't find that Mr. Havercourt has violated this statute. But we respectfully submit that the appropriate standard of review in this case is de novo review. This is a case in which there are no disputed facts. The state is not coming in and saying, you should believe witness A. And we're saying, no, no, you should believe witness B. This is not a case in which a fact finder had to decide the credibility of witnesses and say, well, I believe this witness is credible but this person was not. There's no weighing of evidence taking place in this case. The parties agree on all the facts. And that being the case, where you have agreed facts, where you have really a question about what is the meaning of this provision of the statute, what is meant by the phrase exclusively directed towards persons under the age of 18, those are pure legal questions. And that means this should be subject to de novo review. And the last thing I'll say about that is just this. A simple thought exercise shows the standard of review should be de novo, and that is this. One cannot engage in a thought exercise that says, well, what factual dispute could I resolve in this case that will help me understand whether the appellant should win or the appellant should win? There is no such disputed fact. There's not a fact that can be resolved. The state doesn't suggest there is. We don't suggest there is. That will decide this case. Instead, what will decide this case is what is the meaning of a provision that says the person must be knowingly present at a facility that provides programs or services exclusively directed towards children. And really, that term exclusively is crucial. So let me turn to that. I think the important thing I want to say about that is this is a question about statutory interpretation. And I submitted at the outset, you know, there is some context here. I mean, sex offender statutes, everybody knows, these are statutes that exist in states all around the country. These are statutes that have had some thorny constitutional issues sitting in the background in some states that parts of these statutes have been overturned, sometimes overturned entirely. In 2016, very recently, the state of Michigan, the Sixth Circuit of the United States federal court system struck down portions of a sex offender statute. So these are statutes where there is a looming issue of constitutional concern having to do with void for vagueness issues, due process issues basically, First Amendment issues about associational rights and so on. These statutes are supposed to be geared obviously toward pedophiles to protect people out there. And is a 17-year-old high school kid who takes a roll in the hay with a 15-year-old high school kid a pedophile? I mean, I think the short answer is no. And I would note an important point about the record, which is this. Mr. Haberkorn, after this conviction, was seen by a psychiatric evaluator named Leo Metier. And Mr. Metier did a series of psychiatric evaluations of Mr. Haberkorn and determined that he was a low risk to reoffend. He was a low risk to ever engage in violent conduct and so on. And the reality is since this conviction in 2008, Mr. Haberkorn has never in his life been accused of any kind of sexual misconduct whatsoever, sexually aggressive behavior, violent behavior, or any kind of sexual misconduct by anyone ever since. So I think the idea, but do I have to concede that at the end of the day, yes, he is required to register as a sex offender because of what happened? Yes. And the reality is that now puts him into a world where he's subject to these statutory provisions that are issued in this case. So then the next step is, well then, what does that mean? If we're going to take people like this and say you are now a sex offender, you're going to register, and you're going to be subject to these statutory provisions, then what do those statutory provisions mean? Because if we interpret them in a way that's really broad, that says every possible place you can go where children might show up could subject you to a new felony conviction, that's what I mean when I say that's the backdrop of looming constitutional concerns that we've got to think about. Now, I think the court doesn't have to worry itself about those issues in this case because at the end of the day, there's a really straightforward statutory interpretation that resolves this case. You don't have to worry about the constitutional issues. Those only apply if the court were to accept the very broad definition and description of this statutory provision that the state is proposing. But if the state, if the court basically follows the language of this statute and gives it its plain meaning, I don't think there's a problem. And here's basically what I mean. A few basic principles of statutory interpretation I think lead us to a clear result. One, statutes should be interpreted in a way that provisions of the statute, words in the statute, are not deemed meaningless or superfluous. These are axiomatic principles. Step two, when we do take those words seriously, we should give those words their plain meaning. Step three is when we give them their plain meaning, if it's unambiguous and clear, we're done. Only where it's unclear, only where there is some uncertainty do we then consider other factors. And I would say the word exclusively is as clear as it can be. Exclusively means solely. Exclusively means only. Exclusively means to the exclusion of all others. That's what it means in Black's Law Dictionary and Merriam-Webster Dictionary and so on. So I think that's a very clear provision. Well, see, in criminal law, a statute's got to give somebody fair notice of what activity is prohibited so they know, gee, this statute says this, so I better not do that or I might go to jail. Yes, Judge, and I think that's the next step. To the extent there were ambiguity on this issue, if the state were able to convince you, you know what? Exclusively actually is subject to different interpretations. Is criminal defendant is correct to say it's reasonable to say exclusively means only? But you know what? There's another very fair interpretation here, which is that exclusively means mostly or some of the time. I disagree with that, but even if the court were to find, boy, both are reasonable interpretations of that word, the court would have to accept the criminal defendant's version. Because the rules also require that we say you must interpret a criminal statute favorable to the criminal defendant and we must interpret it strictly. So for all those reasons, even if that was an ambiguous term, we would have to accept the interpretation favorable to the criminal defendant. And that gets into your point. The reason we do that is because there are these void for vagueness type of concerns that loom in the background. If it was ultimately the case that somebody like Mr. Haberkorn could walk into a location, into a zoo, what would he do if the state's interpretation was correct? Could he ever walk into a zoo? Well, zoos have a lot of children that go. But I take my daughter to the Lincoln Park Zoo all the time. And there are lots of couples there on dates. So is that a place that has services exclusively for children? I think the answer is no. But if the state's interpretation, in which exclusively doesn't really have any kind of meaning like that, well then maybe it is. And then we have to ask ourselves questions like, well, what would Matt Haberkorn do if he's invited to go to the museum? Can he go to a museum? Children's museum? Probably not. Museum of Modern Art? I could probably go there. Museum of Natural History? Could I go there? How does he know? How does he decide if he can go there? Can he go, maybe even go during the day, on school days, because kids will be at school, but he shouldn't go on the weekend? Or maybe he should go on the weekend and he shouldn't go on school days, because on school days, you know, kids take field trips to the zoo. I mean, to the museum. He can't make that kind of determination. And that's why the statute has the term exclusively in it, and that term has to be given its full and fair meaning in this case. Thank you. So I talked about the statutory interpretation, and we've talked about the constitutional issues that loom in the background. So the only really remaining issue is, if we have that correct understanding of what the statute means, could he have violated the statute on the plain facts of this case? And the answer to that question is just simply no, because if we did the word exclusively, the meaning only, or solely, plain meaning, then we know that there were only three witnesses called to trial. The state called one witness, Deborah Condotti, who was one of the parent educators on the bus that day. And when she testified at this trial for the state, she was asked this question, Would you say that, I'm sorry, Dana Christian was her name. She was the parent educator on the bus that day. She was asked, question, this November 4th, 2015 visit was not directed exclusively to the children, correct? Her answer was correct. We asked the CEO of Easter Seals about Easter Seals of Joliet and the Jump Start program. Question, would it be correct to say that there are no programs that are part of the Jump Start initiative that are directed exclusively towards children? The answer is yes. So both of the two witnesses say there are no programs that we have as part of Easter Seals and Jump Start that are exclusively for children. So then if we give that term its plain meaning, it's not possible for Mr. Haberkorn to have violated the statute under the facts of this case. I reserve my time and your blessing. Thank you. Counsel? Good afternoon, Your Honors. May it please the Court, Counselors. Counsel was focusing on the term exclusively in Section 11-9.3C, which of course prohibits the unlawful knowing presence at a facility, providing a program or service exclusively directed towards children. But as I kind of stressed in my brief and I'm going to stress right now, I think that the phrase directed toward is just as crucial as the phrase... Let me ask you, what facility was he at? Your Honor, I think the bus has to be considered a facility. If it isn't... Where can you ever find the word facility to include a bus? I didn't look up the definition of facility, but I think if we're saying that this bus, which is transporting parents and children towards a field trip destination, if that's not a facility, but the ball factory, as we're referring to in this case, is considered a facility, then it seems ludicrous that he could be on the bus but not go. You talked about that in your brief about the ball, whatever this bus is. Sure. So Chuck E. Cheesy, that place, I'm right. But he wasn't there. But he was going there. Well, it's not, it doesn't say on your way to. It's not a violation to be on your way to one of these places. But Your Honor, like I said though, if they're all going to the same place, shouldn't they just have waited until he got there? I don't know. It's before they pointed to each other. Well, let's talk about that. Is the crime for which the defendant was convicted, which he did this time, are these the kind of people you think we've got to lay awake at night worrying about them getting their kid? Probably not. I didn't charge the defendant. But I've got to tell you, it just leaves me sitting there, what are these prosecutors thinking? And what's the legislature doing? These things drive me nuts. And you couldn't find anybody who hates pedophiles more than I do, but you've got to get the bad guys. Your Honor, there could be a very lengthy and interesting debate over whether the legislature should change the statutory provisions that apply to... So this statute makes an offense to be at a facility, right? Yes. Okay. So your argument is not only the facility, it's on the way there. Your Honor, I'm kind of... This is your argument. I understand. I'm kind of just cornered into the indictment as... Well, you're cornered into what the state's attorney, the way they charge it, right? So you're making the best argument you can. I have to deal with the facts as they stand. So you're dealing with the facts, and so when you're wrapping this up in an argument, and to carry out how far back you go to, how far back in the chain getting to the facility, so the way you're theoretically creating this argument is on the way there, you've got the transport there. So once you get it in your head, okay, we're going to go to the facility. So you think theoretically the statute says as long as we get the facility, so once you get into the transport vehicle going to the facility, and it's chartered to go to the facility, that's encompassed in the statute under the theoretical framework you set up in your brief. That's true. Okay. So that would encompass the statute. So we'll go back on that. Once you got into a car to go to the transport facility, would that be covered? Or once you decided you got a phone call to go from this friend to take the kids to the facility, once you walked out the door, would that be covered? I'm just trying to piece this out. How far back would it go? This is sort of an interesting concept when you have a statute that talks about the facility, so now you can go this far back, this far back, this far back. You see my problem with this. I do. I'm really, you know, these statutes have really grown a lot, and there's a lot of things passed. I mean, I've got a case right now where I descended in the case from our court, but it's about a dog, a guy walking his dog in sort of like a forest preserve or something, and kids could be there, and our court found it unconstitutional. But, you know, forgive me, but I find this a little, you know, this is sort of a stranger argument, and I know you're doing the best you can for your client's position and so forth, but the bus isn't, I haven't, you know, I haven't found too many cases that say that the bus now, the transportation bus getting to the facility is now somehow attached to the facility. You have to admit this is sort of a, with all due respect, this is sort of an all-encompassing argument now, and I know this is doing the best you can for the people you represent, but I can't think of too many cases that have sort of a... Similar patterns that apply to the same statute. More science fiction sort of, you know. I acknowledge and understand all of your concerns. I guess all I can do is point to the fact that... This isn't a criticism, I'm just trying to pitch in legally and theoretically, you know. It's a tough one, and I would... Let me let you off that hook and stick you on another one. What evidence was there that this, even if that school bus is a facility, what evidence was there that it was for a program directed exclusively toward children? And in fact, was it all the evidence? No, it's not. All the evidence established conclusively that Easter Seals was not an organization directed towards children, and that the Jump Start program also, the offshoot of Easter Seals, also was not directed towards children. The argument made below, and that I made here, necessarily, is that this field trip to this ball factory was directed towards children, based on the evidence that the Easter Seals and Jump Start representatives who testified, they testified that this was a kids' recreation facility, that it was, you know, ball pits and things like that, and it was chosen because kids have fun. But they also testified, even though, obviously, there was something for kids to do, it was a place for parents to bond with kids and other parents in the program, mutual support, and all that kind of thing. So, I mean, listen, most parents, virtually everything you do when your kids are growing up is one way, even going to work, is directed toward the benefit of your kids, you know, and the idea is virtually everything a parent does, in one respect or another, is hopefully directed toward their children, make a better home, and if we're going to use that broad interpretation, where, conceivably, could you go that where people congregate, be it at a restaurant, gee, they feed kids there, along with their parents, and here you had a program for parents, or, you know, a museum, or a baseball game, and it's just, I mean, sometimes I have inmates looking over the asylum, when I look out and see that, like I said, there's ways to deal with people that are dangerous to little kids, and you'll get no argument from me on those, SDP acts, SBP, and, you know, I'm one of these people on the street, as opposed to being on the street with these restrictions if somebody's dangerous. But, this is, and I understand you've got to dance with the gal that brought it, okay, but at the same time, I'm just wondering if the appellate prosecutor's office, if they ever think you have to look at something, and it would sometimes be a great deal of sin for the appellate prosecutor's office to say, you know what, the defendant's right, we get it. And certainly, Ron, I've confessed there many, many times. I guess the problem I have is that this case went through many channels to get to my office. I guess the bigger, the overriding problem I have, and it's why I gave maybe the conviction that was entered here a little more credence than certainly your honors do, and with good reason, I acknowledge your points are all very well taken, but the fact that this was charged in the first place leads me to believe that somebody in some position, who I would assume is qualified, thought that this should go forward. Well, your job is to follow through. I'm not being critical of you. I understand. You can't be. I understand that. I'm not criticizing. You've got a job to do. And you're doing your job. In some way, shape, or form, but that's, yeah, I guess really all I can do is point to the prior fact, and they heard the evidence and decided what they decided, and why they did so is not, I don't know. It's questionable, certainly, and the statute certainly has problems. The legislature obviously thought they were being helpful and being descriptive and narrowly tailoring this law by using the phrase exclusively directed toward, but as your honors have both established, there's a lot of wiggle room and gray area, and that can be expanded to perhaps ludicrous lengths if just given the opportunity. So there are certainly some problems here, and like your honors both said, I'm doing the job that I have and was responsible to do. Well, interpreting this statute, how broadly does the facility concept, because that's what we're dealing with here, Rob, is how broadly does that concept go, and how far does it go? Well, I know the legislature. How far can the facility be encompassed? That's a good question. I don't have the answer to that. I know there's a list. There's that catch-all I described as a catch-all, and then there's the list of daycare center and before and after school programs and things like that. Well, the list is certainly similar to those, of course. And that brings us to, so would you agree that there's no facts below that are disputed? There's no he said, she said. I agree with that. Okay, so the facts are undisputed. So I'm going to the standard of review here. So the question is, okay, these are the facts. A, did this. Did that violate the statute? And which requires us to interpret, well, does this statute encompass that behavior? And so is that a question of law for de novo review, or is that a question of fact for manifestly the common standard or what have you? Honestly, Your Honor, I think that's debatable. I understand there's no facts in dispute in regards to where he was or whether he left on his own, yada, yada. But the triter fact was the person, in this case it was a bench trial, who had to describe whether or not this bus was a facility exclusively directed toward kids. And I think that is a fact. Maybe I'm a little confused as to whether or not that's a legal issue or whether or not they actually have to decide whether the bus in this case was a facility. I feel like that is a fact that had to be decided by the triter fact. That's why I included the standard review that I did in my brief. Are there any other questions? I'm afraid there are not, but I would answer them if there are some. Thank you. Thank you. Just a few points, Your Honor. First, on the standard review question, we cited a few cases in our brief about the standard review, and those are cases that are clearly on point in this kind of scenario, cases in which either the court says, these are Supreme Court of Illinois cases, and they say, look, either they say the facts are all agreed in this case, or they say this case comes down to a matter of statutory interpretation and what does this provision mean. And in each case they say, and therefore it's a de novo review. And in those cases the courts say, after they engage in their assessment of what does that provision mean in the statute, how should we interpret it, then they say, now let me apply that to the facts. And they do that under a de novo review in those cases. I'll note the cases at the state sites in their brief on the standard review are cases that are about this manifest weight type of standard. But in each instance, it's a long case about a jury trial in which there was a bunch of evidence presented, and there were witnesses on each side. And in every one of those cases, either in the paragraph that identifies the standard of review or in the very next paragraph, the court says, and there was conflicting witness testimony in this case, and the jury had to make credibility determinations in this case. So that's a very different type of scenario than the one we have here where the state has, to their great credit, acknowledged that we don't have a disagreement about the facts in this case. That's a point on the standard of review. I wanted to just say a couple of other things. What do you say about his argument that since the bus was going to get to this place, the bus has become the facility? I think that's really problematic. I mean, I think the idea that the statute is written in a way that identifies a delineated set of things, daycares, after-school programs, and it uses the word facility. Facility is a word associated with sort of hard structures. And then to then take that concept and the delineated examples it gives and say, but the catch-all means something very different than all of the things that are in that delineated section of daycares and after-schools. But for the catch-all, we mean, oh, and the bus would have taken to get there. And why not the Walmart parking lot while he's standing there waiting to get on? So I think that's just extremely problematic. I think the other thing I would say is the facility question is one question to be sure. But in some ways, I think we don't have to worry about the facility question if we focus on the exclusively directed-toward part of the statute. Because the reality is if he was getting on a bus that was heading there, and that bus was full of young kids who were part of a field trip from their – if they were in a school parking lot, and a bunch of kids, you know, third graders were getting on this bus and going to the ball factory, and he got on that bus with a bunch of, you know, third graders without any other parents or guardians involved, I think he probably violated the statute. So I don't think we have to talk about the facility. The focus is really on is it exclusively directed-towards children? And the answer in this case, of course, is no. And we know that because the Jump Start program is identified by everybody who testified at trial as a parenting enrichment program. And elder witnesses said this was not exclusively for children. It was for parents to teach them parenting techniques, et cetera, et cetera. So the evidence is clear that when you apply this exclusively directed-toward concept, this simply – this fact pattern simply doesn't fit it. The only other thing I wanted to say about that is you ask some questions about the ball factory, and that gets to the next step in this process. Because it's one thing to move back into the school bus and ask whether it's a facility, but the question at the end of the day is where was that bus headed to the ball factory? Okay, let's even say the ball factory is clearly a place he's not supposed to go. And that's a question because there's no evidence about what happens at the ball factory. They didn't put any evidence that that was really a place for children. Turns out the ball factory has a cafe and a coffee shop and a pool table. But even if it was, there is no evidence in the record whatsoever that Matt Haverkorn intended to go into the ball factory. He could have escorted his cousin on that bus to help to drop them off at the ball factory and done his homework or called a friend and stood outside. There's no evidence that he had any intention of even entering the ball factory. There's not even any evidence that he knew the place that they were going to be going to was the ball factory. So how could he have been knowingly present in such a facility? How could he be violating the statute in that scenario? Because it was their stipulated facts, and their stipulated facts say his cousin was in a parenting program, she asked him to help her. Nowhere in their stipulated facts do they say she told them they were going to a place called the ball factory or anything above the ball factory whatsoever. They could have called her and put that evidence on. So there's really just no evidence here to get us from a guy standing in a parking lot with his cousin to do her a favor to this guy who had some intention to be at a place that's exclusively for children. So you can't do somebody a favor and still violate the law. Understood, and I agree with that, but I just don't think this fits that pattern. You could do your cousin a favor and say I'll go and go to the swim meet at the school and you could violate the law, but not in this pattern, not in this scenario. And again, if this was a violation of that statute, I think you open the door to some real problems from a constitutional perspective with this statute. The last thing I want to say is that there are actually two other independent ways that this case can be resolved in Mr. Haberkorn's favor. One of them is the simple fact that the statute expressly says that he has to be knowingly present. I don't think there's any evidence that he in any way was knowingly present at a facility that was exclusively for children. The fact that we've been having a debate about whether this was exclusively and whether we meet the statutory provision, it's hard. Then you've got to go on to he had to know what, that he was present or no, that it was exclusively. I understand, and the only thought I had there was look, if someone's going to a pizza hut and that's the only place you go to get pizza, but that day it's rented out by a third grade girls' soccer program and you walk into the place and it's all kids, you don't know you shouldn't be there that day. It is exclusively for children on that day, but you wouldn't have known that. We don't want to be in a situation where somebody walking in unknowingly doesn't know what's going on. I don't think there's any evidence that he was knowing here. The last point I want to make is the indictment in this case is also defective because what we've been talking about here today is the ball factory and to the extent we're talking about anything else, we're talking about the event on that date put on by the Jump Start program, but this indictment in this case was exclusively about Easter Seals. The facility identified in the indictment was quote, unquote, namely Easter Seals. This, I think, is really the point when you get to the facility question. They said the facility was Easter Seals. We put out evidence. We brought in the CEO of Easter Seals to say this is not a place exclusively for children and then by closing argument they said, well, forget about Easter Seals. Let's talk about the event that day and let's talk about the ball factory, but nor in the indictment does it reference the ball factory. We would have brought in witnesses from the ball factory. We would have brought in other parents who were on that bus. We would have brought in the parent educators on the Jump Start program and we might have called Mr. Havercourt himself to explain what his understanding was if we had known that they were going to be focusing on the event that day rather than the organization. I thank you for your time. Thank you, counsel. The court will take this matter under advisement and will adjourn for today and the court will return tomorrow.